*Mattocks & Underwood,* for administrator.

---

## SAMUEL MORRISON *vs.* DANIEL MOORE.

A motion to dismiss an action, originally commenced before the county court, on the ground, that the plaintiff's proof does not entitle him to recover over one hundred dollars, is a motion addressed to the discretion of the Court, and ought not to be granted, unless it be clear, that the plaintiff has no fair pretext for claiming over one hundred dollars.

This case came up from the county court, for a hearing upon the following bill of exceptions, allowed by said county court:

" *Assumpsit* for work and labor. Plea, *non assumpsit.* It appeared on trial, that in March, A. D. 1827, the defendant, who was a relative of the plaintiff,—was at the house of the plaintiff's father in Canada,—when it was agreed that the plaintiff, then about eighteen years old, should go to live with defendant, and, by his labor, pay a debt of about $30,00, due to the defendant from plaintiff's father; and afterwards, if plaintiff chose to stay and work for defendant till he was twenty-one years old, and defendant chose to keep him, it was stipulated, that defendant was to give him three months schooling each winter, cloth him decently during the time, and, at the expiration of his service, pay him one hundred dollars, together with two suits of clothes, such as are usually denominated *freedom suits.* It was understood, that, after paying the debt of $30, 00, the plaintiff was to have the sole benefit of his labor for defendant. And there was evidence tending to show, that the plaintiff was to be at liberty to stipulate for himself

CALEDONIA,
March,
1832.

Morrison
vs.
Moore.

as to his said service. One witness, called to prove the declarations of the plaintiff as to the contract, understood him to say, that the $30 was to be deducted from the $100. And others, whose depositions were in evidence, and who professed to have heard the original agreement, understood the $100 to be exclusive of the $30. It was proved, that plaintiff went with the defendant to his house in Barnet, in March, 1827, and lived with him till some time in September, 1828 ; after which he worked one month for a Mr. Strowbridge, who paid defendant $8 for his wages. Evidence was given tending to show, that defendant schooled the plaintiff about three months in the winter of 1827—8 ; that his clothing was rather cheap and poor while he lived with defendant, and that he laboured with ordinary diligence and fidelity, in the service of defendant, during the whole period aforesaid, except when in school as aforesaid, and was generally reputed a middling hand. There was no evidence of any new agreement between the plaintiff and defendant, nor did it appear, that defendant consented to the plaintiff's going away, nor that he expressly forbade it, or claimed to have him remain in his service. The evidence being closed, the defendant moved the court to dismiss the action for want of original jurisdiction in this court ; but the court overruled the motion, and the cause was committed to the jury, who returned a verdict in favor of the plaintiff for $50 damages and his costs. And, to the refusal of the court to dismiss said action, the defendant excepts. Exceptions allowed and passed to the Supreme Court, and execution stayed."

*Fletcher and Chandler, for the defendant.*—On the strongest view, in which the case can be taken for the plaintiff, it is contended, the county court had not jurisdiction, and that a justice of the peace had ; the damages not exceeding, by the plaintiff's showing, one hundred dollars. By an act passed November 5, 1801, *it is enacted, that the several county courts shall not hear, determine, nor adjudge on any action or suit, which is originally made cognisable before a justice of the peace, unless entered by appeal, &c.*—*( Stat. 91.)* By an act passed November 15, 1821, *it is enacted, that every justice, within his proper sphere of jurisdiction, be authorized to hear, try and determine, all pleas, &c., where the matter in demand did not exceed one hundred dollars.*— *Stat.* 139. What is the debt or other matter in demand, which gives and takes away jurisdiction? and how is the amount to be ascertained ? The nature of the case must guide and direct the court, or it is in the power of the plaintiff to give jurisdiction and take it away from the court. In actions of slander, trespass, assault and battery, &c., the amount of damages is discretionary, and necessarily uncertain. But in covenant, debt, trover, assumpsit,

34

CALEDONIA,
March,
1832.

·Morrison
vs.
Moore.
and the like, the damages are ascertained by computation. They are not arbitrary. The law fixes a rule. The legal cause of action, the value of the thing put in demand, is to be regarded as giving jurisdiction. To ascertain this, we must recur to the matter in dispute. The matter in dispute was the compensation, which the plaintiff ought to receive for the time, which he had worked for the defendant, in fact, after he was solely entitled to receive the pay, not the time stated in the declaration, of which the plaintiff had no proof. A compensation for services actually rendered is the matter in demand, and necessarily furnishes the criterion to be resorted to in settling the question of jurisdiction. The $8, we lay out of the case, because the defendant was entitled to the plaintiff's earnings as long as he was in his employ. It can no more furnish a rule for estimating the value of plaintiff's labor, than if the ground upon which he worked for defendant produced good crops. The clothing and schooling we lay out of the case, because the plaintiff does not count upon that portion of the contract in his declaration. Had the plaintiff labored until he was twenty-one years of age, and received no schooling nor clothing, he could not recover damages in a count for labor done and performed ; but it must have been a special action upon the contract. The $30 must not be taken into the computation. That part of the contract was in the right of the father ; and the son, by express stipulation, was to pay that sum, before he was to be entitled to any of his earnings. It is evident, then, that the son cannot bring that into his account against the defendant. The contract entered into with the father, at all events, was in force until the thirty dollars was paid. It necessarily governs the *pro rata* of the son's labor to the amount of that sum. But the father was competent to contract at the time he made the contract for the son's labor with the defendant. That contract was in force, until rescinded by competent authority. This contract could only be rescinded by the father or some one empowered so to do by him. If the father delegated this power to the son, until it was exercised, the first contract was in force, and whatever the parties did was under that contract. But the plaintiff did not exercise this delegated power ; nor did he attempt to act in his own right to put an end to the contract made with his father. The case states, that there was no new agreement; and, when the plaintiff left the employ of the defendant finally, the defendant neither assented nor dissented. The labor for the defendant was performed under the contract made with the father and no other. There

CALEDONIA,
March,
1832.

Morrison.
vs.
Moore.

could be no implied contract so long as the express contract existed. Had the plaintiff remained with the defendant, until he was twenty-one years of age, he would have lived with him three years. Had there been no new contract, the defendant would have been under obligation to cancel the debt of $30 against the father, give the plaintiff three months schooling each winter, two suits of clothes, and one hundred dollars. But the plaintiff remained in the defendant's employ but nineteen months, including the month he worked for Strowbridge. Had the plaintiff continued with the defendant, under the contract made with the father, till he was twenty-one years old, he would have been entitled to nine months' schooling, which, deducted from the three years, leaves two years and three months for labor. Deduct the three months schooling from the time the plaintiff was in fact in the defendant's employ, and it leaves one year and four months of actual labor. But the father was owing $30 to defendant. This was to be paid, at all events, before the plaintiff would be entitled to any of his earnings, upon his own showing. The service actually rendered, then, is the balance of sixteen month's labor, after deducting the thirty dollars. This is the matter in demand. This is the value of the thing in dispute. The contract entered into with the father not having been abrogated, the rights of the parties must be governed by that. This contract furnishes a rule of computation. It is not uncertain and indefinite, like trespass, assault and battery, slander, &c. ; but furnishes as definite a rule as the interest table. In short, analysis settles the question. Had the term of service been completed, under the contract with the father, the time computed for actual labor would have been twenty-seven months. One hundred and thirty dollars for twenty-seven months, is $4,81 per month. At this rate it requires six months and one fourth of a month to pay thirty dollars due from the father to the defendant. Deducting six months from the sixteen months, the time the plaintiff actually labored for the defendant, leaves nine months and three fourths of a month to be accounted for by the defendant. This amounts to $46,90. But the jury have seen fit to estimate the balance at fifty dollars. Either sum is conclusive of the jurisdiction of the court. The doctrine contended for in this case is not new. It has been repeatedly ruled in the Supreme Court of the United States.— *Wilson* vs. *Daniel*, 1 *U. S. Rep.* 185 ; *U. S.* vs. *Mc'Dowell*, 2 *do.* 122 ; *Cooke* vs. *Wardrow*, *do.* 174 ; *Wise* vs. *Turnpike Co. do.* 487.

CALEDONIA,
March,
1832.

Morrison
vs.
Moore.

J. *Mattocks, for the plaintiff.*—1. The contract was, that the plaintiff should work for defendant to pay his father's debt of $30, and afterwards to have his own earnings. The contract about staying until he was *twenty-one*, was, in case they both agreed. They did not agree : therefore, the bargain dropt, and plaintiff was entitled to what he earned. He labored from some time in March, 1827, until some time in September, 1828 ; and one month after with Strowbridge, for defendant. The time, if all March and September is included, is one year and eight months ; or, if half of those months is included, one year and seven months. Deducting the first three months, to pay about $30 for his father's debt, being about $10 per month, leaves about sixteen or seventeen months' labor, the plaintiff going to school about three months in the winter ; and, if these three months are deducted, still leaves thirteen or fourteen months' work, during the best part of two seasons. Now, who can say that this labor was not worth over $100, even if plaintiff's clothing, which was rather cheap and poor, was furnished by defendant, (which does not appear,) and, if the value of it is to be first deducted, in order to get at the jurisdiction, (which we deny,) when it is well known, that, in this country, from $120, to $150 is the price of a hired man for one entire year? No testimony was put in, showing the value ; and the court cannot presume it. Besides, the value of the clothing will not affect this question. 1st. Because the case does not show, that defendant furnished any clothing. 2d. If he did, defendant might not have defended the suit ; or might not have set up this deduction from the wages, and afterwards sued plaintiff for the clothing, as there was no testimony, that any clothing was received by plaintiff, in payment for his labor.

2. Why was not plaintiff's whole labour of twenty months, the "debt or matter in demand," subject to be reduced, or lessened, by the application of the $30 against so much of the work as was worth that sum ? This not having been done by the parties, why is it not like a note of $150, $50 of which has been paid, but not endorsed ; or rather fifty bushels of wheat having been paid towards it, the price not agreed on ? The unsettled and unliquidated dealings of the parties have certainly been over $100 ; and, whatever the balance due might have been, the plaintiff is entitled to a superior court to decide upon these demands. It is not the policy of the law to permit a single justice to overhaul large dealings, and render judgement for $100, the wrong way, and thereby injure the losing party $200.

CALEDONIA,
*March,*
1832.

Morrison
*vs.*
Moore.

3. The most courts have ever done in dismissing actions for want of jurisdiction on trial is, when the claims are clearly out of their jurisdiction ; as for a particular sum of money ; or for the value of goods or services, where all the plaintiff's witnesses swear the value below the county court's jurisdiction ; say an action of trover for a horse or cow ; if all plaintiff's witnesses said the animal was worth less than $100, the court might dismiss *;* but if any one put the value over, although all others for plaintiff and defendant said less, they would not dismiss.    And, probably, even in so clear a case as of a middling good cow, the court would not decide upon the value and dismiss without proof : but certainly in the case of a middling good horse, they would not hear themselves called upon to put a value.    Much less would they put a value upon 13, 14, 17 or 20 months' work, a minor's going to school " about three months," or a " few cheap and poor clothes." They cannot judicially guess out the facts, and then value labor, without proof of its demand and price, at the time and place, when and where performed.

4. Then, if plaintiff's rule of damages should have been predicated upon what he was to have had, if he had stayed until he was *twenty-one,* yet the court cannot decide, that plaintiff, for the time he did stay, was not entitled to over $100.    For, 1st. plaintiff's age is not shown.    "About eighteen" is too indefinite.    2nd. How much less than decent clothes were furnished during the time he stayed.    3d. Plaintiff might have been sick all the remainder of his time, and been chargeable, and not serviceable, to defendant. 4th. What is the value of " two freedom suits." It is said, that, in a plea of usury, the per cent. must be stated, as well as the facts, for the court are not to be called on to make the cast, to see that the interest is unlawful.    But here the court are called on from uncertain facts to estimate value without proof; and this to oust the county court of their jurisdiction.

5. It is rather a matter of discretion in the county court, upon the whole facts before them, to decide, whether they will dismiss. If the suit is brought in good faith, to try a right and not to enhance cost, they will be slow to dismiss ; and this discretion is scarcely revisable by this Court, and, if it is, this is a strong case for plain- tiff.    1st. It was at least doubtful.    He thought he ought to have over $100, and he might well go before a court, which could give it.    2nd. The plaintiff was a minor.    3d. Defendant never interposed this objection until the third term, and on final trial,

CALEDONIA,
March,
1832.

Morrison
vs.
Moore.

HUTCHINSON, C. J., delivered the opinion of the Court. The only question presented in this case is, whether the county court ought to have dismissed this action, on the ground, that the sum in dispute, or matter in demand, did not exceed one hundred dollars. There is some difficulty in many cases of uncertainty in point of value of property sued for. Suitors may entertain doubts, to which court they ought to apply for redress of what they deem their wrongs. There was an uncertainty in this case, with regard to the value of the labor, performed by the plaintiff, of which the defendant had the benefit, and the value of the clothing, to which the plaintiff would have been entitled, at the age of twenty one years, had he tarried till then, and from the furnishing of which the defendant was discharged by the plaintiff's not tarrying his whole time contracted for. And the case presents no reason for any diminution from the plaintiff's earnings, while he did continue in the defendant's employ, arising from any unwarrantable breaking off the contract. Amidst these uncertainties, the court might form but a vague conjecture, at what sum the jury would assess the plaintiff's damages. This motion was addressed to the discretion of the court; and it was their duty to exercise a sound discretion, and not dismiss the action under such circumstances, as would endanger the plaintiff's rights, and leave him liable to a similar rebuff, should he commence his suit before a single magistrate. The defendant received eight dollars for one month's labor of the plaintiff. He may have thought nearly all his labor of a similar value by the month. And others, with whom he conversed, may have thought so too. Yet this would be no rule for the decision of the court, any further than these circumstances would show the action brought in good faith, and the jurisdiction selected in good faith, and not from the motive to enhance cost. In this case there is something more. There is reason to believe, that the defendant considered the jurisdiction well selected; for there have been two or three trials in this case; and this motion to dismiss comes on the final trial before the jury. It ought not to prevail, unless it were first rendered very certain, that the plaintiff's claim would admit of no fair pretence of its amounting to more than one hundred dollars. The verdict found by the jury can furnish no rule for a decision of this question. The jurors may have differed widely from each other, and this verdict may have been the result of a compromise. This verdict no more shows, that the county court had not jurisdiction, than a verdict of one hundred and ten dollars, in a suit before a justice

CALEDONIA,
*March,*
1832.

Morrison
*vs.*
Moore.

of the peace, would show that such justice had no jurisdiction. In such case, the damages being in their nature uncertain, the plaintiff might remit all over $100, and have execution for that sum.

Another difficulty is slightly suggested by the plaintiff's counsel. This cause comes up before this Court, as upon a writ of error. We can review the decisions of the county court upon all questions of law, arising upon facts found, or agreed upon by the parties, and placed upon the record by a bill of exceptions. If it appeared of record, that the plaintiff produced no testimony tending to show greater damages than fifty dollars, whether that appeared by the declaration's comprising no greater sum, or by the exceptions stating the amount placed in controversy, we could reverse their decision, if we find it incorrect. But, when the county court decide upon the weight of evidence merely, we cannot revise their decision. In the present case, the motion to dismiss virtually called upon the court to weigh the evidence, and decide, that the plaintiff, should he recover, had no fair pretence of recovering over one hundred dollars. Their decision depended wholly upon the weight of evidence. If they had found the fact, that the plaintiff had no fair pretence to claim over one hundred dollars, and placed that finding upon the record, and yet had refused to dismiss the action, we should be able to revise their decision and affirm or reverse it, as the law required. This they have not done. They have reported a chain of facts proved, which stand as evidence, from which to infer the further fact of the sum which the plaintiff might have a plausible claim to recover. And their decision upon the same question shows their inference to be, that the plaintiff had a plausible pretext to try to obtain a verdict for more than one hundred dollars.

The judgement of the county court is affirmed.

*Fletcher & S. A. Chandler*, for defendant.

*J. Mattocks*, for plaintiff.